# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3760 | **DATE** | 6/25/2004 |
| **CASE TITLE** | Lockheart vs. Archer | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. For the reasons stated in the Memorandum Opinion and Order, plaintiff's motion for summary judgment [5-1] is denied. Status hearing is set for 7/8/04 at 9:30 a.m. Trial is set fo 1/4/05.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUN 2 8 2004 date docketed | 23 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 6/25/2004 date mailed notice | |
| MD | courtroom deputy's initials | 2004 JUN 25 PM 4:42 FILED Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CHRISTOPHER LOCKHART, a minor, by his mother and guardian SHARON LOCKHART,

Plaintiff,

vs.

Dolton Police Officer ARCHER, Star No. 535,

Defendant.

No. 03 C 3760
Judge Joan H. Lefkow

DOCKETED
JUN 2 8 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Christopher Lockhart ("Lockhart"), has filed this law suit against defendant, Dolton Police Officer Michelle Archer ("Archer") alleging, pursuant to 42 U.S.C. § 1983, that Archer violated his Fourth Amendment rights by seizing him without probable cause. Before the court is Lockhart's motion for summary judgment. For the reasons set forth below, the motion is denied.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving

party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO DEFENDANT

Lockhart is a minor born July 7, 1986. (Pl. L.R. 56.1 ¶ 3.)[1] His mother and guardian is Sharon Lockhart. (*Id.*) On December 16, 2002, an anonymous caller phoned the police and informed the dispatcher that three or four black males were reportedly trying to gain entry into a house at 14744 Evers in Dolton, Illinois. (Pl. L.R. 56.1 ¶ 10.) The dispatcher relayed this information to Archer. (Pl. L.R. 56.1 ¶ 8.) Archer arrived at the location within a minute or a minute and a half and saw Lockhart standing by himself approximately five or six feet away from the house, but standing on the property. (Pl. L.R. 56.1 ¶ 11; Def. L.R. 56.1 ¶¶ 1-2.) Archer ordered Lockhart to come to her and he complied with this order. (Pl. L.R. 56.1 ¶ 12.) Archer ordered Lockhart to put his hands on her car and asked him what he was doing there. (Pl. L.R. 56.1 ¶ 13.) He responded "nothing." (*Id.*)

---

[1] In the caption of the Complaint plaintiff was misidentified as "Christopher Lockhart," although his last name is actually "Choice." (Pl. L.R. 56.1 ¶ 3.) For consistency, the court will continue to refer to him as Lockhart.

When she arrived at the residence, Archer also observed a black male subject, "Brooks," standing by the front door of the residence approximately four feet from the house. (Def. L.R. 56.1 ¶ 3.) She also personally observed two black males on the south side of the home near a rear door attempting to gain entry. (Def. L.R. 56.1 ¶ 4.)[2] These two males were later determined to be Shateu Love and Armand Perkins. (Def. L.R. 56.1 ¶ 5.) When Archer approached, both Love and Perkins ran from the scene. (Def. L.R. 56.1 ¶ 6.) Archer gave a short chase and caught one of the subjects by a rear fence area. (Def. L.R. 56.1 ¶ 7.) Another responding officer, Sergeant Lacey, chased the other subject and caught him on Chicago Road at 146th Street. (Def. L.R. 56.1 ¶ 8.)

After the two other juveniles were apprehended, Archer returned to her squad car where Lockhart was still standing. (Pl. L.R. 56.1 ¶ 16.) She performed a pat-down search of Lockhart and the other juveniles. (Pl. L.R. 56.1 ¶ 17.) No contraband was found on Lockhart as a result of this search. (Pl. L.R. 56.1 ¶ 18.) After completing the search Archer transported Lockhart and the other juveniles to the police station. (Pl. L.R. 56.1 ¶ 19.) Lockhart was in handcuffs at this time and, according to Archer, he was under arrest. (Pl. L.R. 56.1 ¶ 20.)

---

[2]Lockhart urges the court to ignore paragraphs 4 and 5 of Archer's statement of material facts because those statements rely on a police report written by Archer. Lockhart argues that the report is inadmissable hearsay and, therefore, should not be considered on this motion. The court disagrees for two reasons. Initially, because this is a civil case, the police report would be admissible under Federal Rule of Evidence 803(8). *See, e.g., Parsons v. Honeywell, Inc.*, 929 F.3d 901, 907 (2d Cir. 1991) ("We agree with the district court that the police report itself would be admissible as a public record pursuant to Fed.R.Evid. 803(8)."); *Salmi v. D.T. Mgmt., Inc.*, No. 02 C 2741, 2002 WL 31115581, at *2 (N.D. Ill. Sept. 23, 2002) (citing Rule 803(8) and noting that "[b]ecause this is a civil–not a criminal–matter, a police officer's statements of facts and observations in his report are admissible."); *Roth v. National R.R. Passenger Corp.*, No. 97 C 6503, 1999 WL 1270706, at *1 (N.D. Ill. Dec. 29, 1999) (noting that Rule 803(8) makes police reports "an express exception to the exclusion of hearsay evidence."). Moreover, on summary judgment evidence need only be admissible in substance not form. *See Black v. Rodriguez*, No. 01 C 1721, 2002 WL 31045390, at *1 n.4 (N.D. Ill. Sept. 11, 2002) (citing *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994)). Archer would be able to testify at trial independently as to the facts contained in her police report. Accordingly, the court will consider these facts in deciding this motion for summary judgment.

Archer admits that she never saw Lockhart exiting the house or engaging in any criminal activity. (Pl. L.R. 56.1 ¶¶ 21, 24.) Archer did state that Lockhart fit the description she was given by the dispatcher. (Pl. L.R. 56.1 ¶ 25.) The only recollection Archer has of this description is that it identified "a black male in a black jacket." (Pl. L.R. 56.1 ¶ 26.) She claims that she does not recall the complete description she was given, but asserts Lockhart fit the description. (Pl. L.R. 56.1 ¶ 27.) Archer recalls that Lockhart wore a black jacket, but so did some of the other juveniles who were arrested with him. (Pl. L.R. 56.1 ¶ 28.) None of the other arrested juveniles ever reported that Lockhart was involved in trying to gain entry to the Evers house and none of them said Lockhart was with them at that house. (Pl. L.R. 56.1 ¶ 29.)

Inside the police station Archer again asked what Lockhart was doing at the house and he again responded "nothing". (Pl. L.R. 56.1 ¶ 33.) Lockhart was ultimately released from custody later that same day and was never charged with any crime. (Pl. L.R. 56.1 ¶¶ 36-37.) Archer believes that Lockhart was released because "he didn't have any role in what was going on." (Pl. L.R. 56.1 ¶ 38.) When specifically asked by her own attorney what in her mind created probable cause to arrest Lockhart, Archer testified, "The call from dispatch was my probable cause. They sent me to the call for a burglary in progress, gave the description, and that's what I had to go on." (Pl. L.R. 56.1 ¶ 39.)

## DISCUSSION

The Fourth Amendment prohibits unreasonable searches and seizures. An arrest without a warrant is permitted under the Fourth Amendment if the arresting officer had probable cause. *Thompson* v. *Wagner*, 319 F.3d 931, 934 (7th Cir. 2003); *Sparing* v. *Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001). Probable cause exists if a police officer "reasonably believes,

4

in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense." *Thompson*, 319 F.3d at 934. Probable cause is evaluated "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer*–seeing what he saw, hearing what he heard." *Booker v. Ward*, 94 F.3d 1052, 1058 (7th Cir. 1996) (quoting *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992)) (emphasis in original). When a probable cause question arises in a damages suit "its resolution typically falls within the province of the jury, though a conclusion that probable cause existed as a matter of law is appropriate when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994).

Lockhart argues that, even viewing the facts in a light most favorable to Archer, probable cause could not have been present in this case because Archer, essentially, relied on a uncorroborated anonymous tip in arresting him. Moreover, Lockhart argues that even if Archer had reasonable suspicion to stop him, no further information was gained afterward that thereby granted Archer probable cause to arrest him. Factually, Lockhart supports his case by noting that (1) there is no dispute that the tip was anonymous; (2) all that Archer can remember of the tip was that it was of a "black male in a black jacket"; (3) Archer saw more than one black male in a black jacket at the scene of the crime; (4) Archer never saw Lockhart engaging in any criminal activity; and (5) the tip contained no predictive information that would exhibit insider information on the part of the tipster.

5

Lockhart analogizes this case to *Florida v. J.L.*, 529 U.S. 266 (2000). In that case, an anonymous caller reported to the police that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." *Id.* at 268. Two officers arrived at the scene thereafter and saw three black males "just hanging out [there]." *Id.* (bracket in original). One of the three was J.L., who was wearing a plaid shirt. *Id.* Other than the tip, the officers had no reason to suspect illegal conduct because they did not see any firearm and J.L. "made no threatening or otherwise unusual movements." *Id.* The officers frisked J.L. and seized a gun from his pocket. *Id.*

In concluding that the search of J.L. lacked reasonable suspicion, the Court noted that the officers' "suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller." *Id.* at 269. The court noted that the tip at issue provided no predictive information and "left the police without means to test the informant's knowledge or credibility." *Id.* at 271. Moreover, the Court rejected the notion that the tip was reliable because it accurately described the suspect's visible attributes. As the Court explained:

> An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. Cf. 4 W. LaFave, Search and Seizure § 9.4(h), p. 213 (3d ed. 1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as to the likelihood of criminal activity, which is central in anonymous-tip cases).

*Id.* at 272.[3]

Archer, in response to Lockhart's arguments, suggests that this is a case in which she corroborated the anonymous tip with her own observations. She argues that the tip said three to four black males were present at the scene, and she in fact saw three to four black males at the scene when she arrived at the residence a minute to a minute-and-a-half after receiving the call from the dispatcher. Moreover, Archer argues that the individuals, including Lockhart, fit the description given by the anonymous tipster to the dispatcher. Finally, and most significantly, Archer points out that she was able to corroborate the tip insofar as she did see two of the black males attempting to gain entry into the residence. In other words, the tip was corroborated in its assertion of illegality as the court required in *J.L.* 529 U.S. at 271. Thus, Archer argues at the very least questions of fact exist as to whether probable cause existed.

Bearing in mind that in damages cases such as this the issue of probable cause is a jury question unless "there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," *Sheik-Abdi*, 37 F.3d at 1246, the court is unable to say as a matter of law that Archer unreasonably believed that probable cause existed regarding Lockhart. An officer received an anonymous tip that four black youths were attempting to break into a residence. A minute to a minute and a half later she saw four black youths meeting the description given by the dispatcher on the property, and two of those youths were actually independently seen by the officer attempting to break into the residence. This case is different from *J.L.* insofar as Archer was able to corroborate important parts of the tip, including that she

---

[3] As Lockhart points out, the court in *J.L.* was considering whether reasonable suspicion existed to search the defendant. In this case, because a warrantless arrest was made, Archer needed probable cause, which is a higher standard. *See, e.g., Alabama v. White*, 496 U.S. 325, 328-29 (1990).

7

actually observed criminal activity at the scene. A reasonable jury could find that this corroboration for those individuals was enough for Archer to reasonably believe that Lockhart was involved in a crime. Lockhart's motion for summary judgment is denied.

## CONCLUSION

For the reasons stated above, Lockhart's motion for summary judgment is denied [#15]. This case will be called for status on July 8, 2004 at 9:30 a.m., and is placed on the court's trial calendar for January 4, 2005.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: June 25, 2004